IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

In re
LONNIE EVERETT OWEN, Sr.

      Plaintiff in Limitation,          No. 2:11-CV-00196-JAM-GGH
_____/

CLAIMS IN LITIGATION
_____/

RICHARD HEDRICK, et al,

      Cross-Plaintiffs.

  vs.                                      <u>ORDER</u>

WESTERN OUTDOOR NEWS, et al.

      Cross-Defendants.
_____/

<u>BACKGROUND</u>

        Pending before the Court is cross-defendant Buchholz's ("Buchholz") motion for protective order regarding cross-plaintiff Hedrick's (Hedrick) discovery requests, filed on August 23, 2012. Dkt. 89. The deadline by which all discovery must be completed in this matter is December 14, 2012. Dkt. 72.

        This personal-injury lawsuit arises from a boating accident on August1, 2009 in which cross-plaintiff Richard Hedrick's ("Hedrick") boat collided with plaintiff-in-limitation

1

Lonnie Owen's ("Owen") boat.[1]  Dkt. 90.  At the time of the incident, Owen was participating in a fishing tournament ("the tournament") sponsored by cross-defendant *Snagproof*.  Id.  Cross-defendant Gene Buchholz ("Buchholz") asserts that he participated in the tournament only as a "starter," announcing when the boats would begin the tournament.  Id.  Buchholz also operates a bait and tackle shop — Hook, Line & Sinker — at the organizational or operational site of the fishing tournament.  The property, which Buchholz runs his shop from, is leased from cross-defendant Russo's Marina, Inc. ("Russo").  Cross-plaintiff Hedrick alleges claims of negligence against Buchholz.

In connection with these claims, Hedrick served written discovery upon cross-defendant in the form of requests for production ("RFPs") and for admission ("RFAs").  RFAs were served on June 12, 2012 and cross-defendants responded on July 12, 2012.  Dkt. 90.  On June 3, 2012, Hedrick noticed Buchholz's deposition and served cross-defendant with RFPs.  Id.  Counsel met and conferred by telephone on July 27, 2012 regarding the subject of the RFAs and the RFPs but were unable to reach a compromise on either.  Id.  In compliance with the Local Rules, the parties filed a joint statement setting forth the basis and precise issues of their discovery dispute.  Dkt. 90.  On September 20, 2012, the court conducted a hearing on this matter in which Arnold Berschler appeared telephonically for cross-plaintiff Hedrick and Marilyn Raia appeared in person for cross-defendant Buchholz.  After conducting oral argument and review of the parties' briefs, the court orders as follows.

Discussion

Before turning to the disputed discovery, it is necessary to address one procedural issue in this case that is pertinent to the scope of discovery.  On October 3, 2012, the District Judge denied cross-defendant Russo's motion for summary judgment in which Russo argued that it owed no duty to cross-complainants because of its limited involvement in the fishing

---

[1] The facts are taken from the parties' joint statement of the discovery dispute filed with the court on August 23, 2012.  Dkt. 90.

tournament. Dkt. 99 (denying motion with prejudice). Cross-defendant Buchholz maintains the same position with respect to cross-plaintiff Hedrick. At hearing, discussion was held over what was meant by denying the motion; particularly, whether Weiram v. RKO General, Inc., 15 Cal.3d 40 (1975) would apply to the facts of this case. Sept. 20, 2012 Hr'g at 10:00am. Weiram is a case which Hedrick cites in support of the argument that a legal duty may be imposed upon cross-defendants in light of their role in the fishing tournament. See Dkt. 76. Weiram stands for the general proposition that contest sponsors or managers may be held liable for setting in motion a scenario where persons competing in the contest may foreseeably perform negligent acts. Cross-defendants Russo and Buchholz seek to distinguish that case from the facts presented here, arguing that the duty imposed by the Weiram court would be misapplied to the instant litigation. That is, cross defendants believe that their role in the contest was so *de minimis* in contrast to the radio station in Weirum that it would be unfair to permit broad discovery based on that case. Hedrick, on the other hand, desires, among other things, discovery directed to the benefits which were received by cross-defendants – the more benefits, the greater the potential role of "sponsor," or "manager," and hence the more likely the application of Weirum.

The district judge's order (Docket # 99) denying Russo's summary judgment motion did not discuss Weiram or any of the legal theories introduced by any party in support of its position. It merely found that material issues of fact exist which did not permit summary adjudication. Therefore, whether Russo's or Buchholz owed a duty to cross-plaintiffs is an issue still at play in this case, and is ultimately dependent on the facts set forth at trial. On the other hand, Fed. R. Civ. P 26(b)(2)(C) requires that the discovery judge engage in some weighing of the benefits vis-a-vis burdens of discovery, and this cannot be done without taking a peek at the merits, despite the protestations of Hedrick's counsel that the undersigned would be exceeding his authority if such a peek were made.

At this stage of the case, given the competing assertions of the parties, and after taking the requisite peek, the undersigned is bound to allow some discovery on the Weirum

theory, although it is clear that the present cross-defendants are hardly in the same position of the Weirum radio station defendant which created, sponsored, and managed the contest involved therein. Accordingly, Hedrick is entitled to non-overly burdensome discovery on his side of this claim.

**Requests for Production**

Nineteen RFPs remain in dispute. They relate, generally, to two categories of information which cross-plaintiffs seek to discover: (1) business records, including sales transactions, from Buchholz's bait shop at Russo's Marina and (2) documents relating to Buchholz's participation in fishing tournaments unrelated to the one giving rise to the instant litigation. Cross-defendant Buccholz objects that these requests seek information entirely irrelevant to whether Buccholz was personally negligent.

Fed. Rule Civ. Pro. 26(b)(1) allows discovery of any nonprivileged matter that is relevant to any party's claim or defense. The discovery rules are to be accorded a broad and liberal treatment allowing a party to inquire into the facts underlying its opponent's case. See Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392 (1947) (a chief argument against the 'fishing expedition' objection is the idea that discovery is mutual). Evidence is relevant if it has *any* tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evi. 401(emphasis added). Determining which facts and matters are 'of consequence' depends upon the claims alleged. See Moore v. Donahoe, 460 Fed. Appx. 661, 663 (9th Cir. 2011) (upholding district court's determination, after conducting a fact-intensive inquiry under Fed. R. Evid. 401, that evidence was not relevant to plaintiff's claim).

However, as previously stated, acting as a backstop to the scope and extent of discoverable information is Fed. R. of Civ. Pro. 26(b)(2)(C), which requires the court to limit the frequency or extent of discovery upon determining that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the importance of the issues at stake and of discovery in resolving those issues. See Fed. R. Civ. P. 26(b)(2)(C)(iii).

**RFPs No. 7-18**; 21

RFPs 7-16 call for documents and communications reflecting all sales transactions at Hedrick's bait shop between July 20, 2009 and through August 2, 2009. Dkt. 90 at 9. Cross-plaintiff claims this information will be used to compare the amount of business Hedrick's bait shop conducted on the tournament day as opposed to a non-tournament day; and, also, as compared to the amount of sales transacted on the "practice" days leading up to the tournament. Since Buchholz's level of involvement in the fishing tournament is at issue, the extent to which he was invested in and benefitted financially from the tournament is probative on this issue. Buchholz claims that producing this information would be extremely burdensome. But while the undersigned is mindful of the need to balance the hardships of discovery with its likely benefit, Buchholz has not provided any factual basis showing what, exactly, is so burdensome about producing sales records for this period. At hearing, counsel acknowledged that she didn't know how it would be done; if it could be done by Mr. Buchholz himself or if his accounting department could manage this task and how much time or expense this would consume. Sept. 20, 2012 Hr'g at 10:00am. Without more, the undersigned finds these requests reasonable and cross-defendant Buccholz will produce all such responsive documents.

RFP 21 similarly requests information of deposits into the business operating accounts of Buchholz's bait shop for the time period covering July 1, 2009 through August 31, 2009. This request will be limited to the sales transactions conducted at Buchholz's bait shop located at Russo's Dock for the period of time specified.

By contrast, RFPs 17 and 18 request information too remote from the events at issue to warrant the burdens of compelling its discovery. Seeking sales transactions from both of Buchholz's bait shops during any fishing tournament in 2009 where he acted as a director is not

\\\\\

\\\\\

\\\\\

sufficiently probative of cross-defendant's financial investment in *this* fishing tournament. Accordingly, Buchholz is not required to respond to this production request.[2]

**RFPs No. 20, 31**

RFPs 20 and 31 seek the various commercial agreements between Buchholz and Russo's in connection with the space occupied by Buchholz's bait shop. Russo's is also named as a cross-defendant in this lawsuit whose involvement in the fishing tournament is at issue. The lease agreements between the two parties may have involved terms contingent on sales figures of the bait and tackle shop or terms apportioning liability for tournaments in which Buchholz is involved. Both of these pieces of information would certainly bear on the parties' investment in the *Snagproof* tournament. Likewise, documents evidencing agreements between the parties to cross-market or cross-advertise bear directly on both Buchholz' and Russo's involvement with the fishing tournament. However, such documents will be limited to those created between 2005 and 2009. Accordingly, cross-defendant will produce documents responsive to RFP 20 and 31 limited to the time period identified above.

**RFPs No. 19; 22-25**

Hedrick requests documents related to Buchholz's involvement in fishing tournaments other than the one giving rise to the instant litigation. See Dkt. 90 at 12. Buchholz again contends that none of this information is relevant to his personal liability in the *Snagproof* tournament. But cross-defendant conceives of relevancy too narrowly. Looking to the claims at issue in this litigation, Hedrick contends that it was foreseeable to Buchholz that failure to take reasonable steps to ensure that the tournament participants operate safely would result in injury to the general, water-borne recreational public. Dkt.49 at ¶19. At hearing, cross-plaintiff

---

[2] The probative point to be made is a comparison of the "tournament income" versus the income received on an "ordinary" day. This point is not enhanced in the least by a comparison of income on another tournament day remote in time and to some extent, place, as well as guessing about the extent of Buchholz's involvement in that tournament. No reasonable argument can be made that simply benefitting financially as a coincidence to some one else's tournament makes one liable under Weirum.

characterized Buchholz as a sophisticated tournament conductor who has been involved with many tournaments throughout California and is well-versed in the custom and practice of such events. Sept. 20, 2012 Hr'g at 10:00am. The accuracy of this characterization bears directly on Buchholz's knowledge in undertaking the duties he performed at the *Snagproof* tournament and Hedrick is entitled to discovery on this claim. On the other hand, the requested information concerning Buchholz's involvement as a mere *contestant*, wherever and whenever he was such a contestant, surpasses the limits of Rule 26(b)(2)(C).[3] In order to limit discovery on this claim, the undersigned revises RFPs 19 and 23 to permit an inquiry only as to Buchholz's role as a director or managing official of fishing tournaments:

> RFP 19: Any and all documents and/or communications listing fishing tournaments in which Gene Buchholz participated as a director or managing official during the period 2009 through 2012, inclusive.

> RFP 23: Any and all documents and/or communications between Gene Buchholz, on the one hand, and Western Outdoor News (and/or its affiliated organizations and personnel) on the other hand, where rules, policies and procedures for fishing tournaments are set forth therein for the period of 2008 through 2012, inclusive.

**Requests for Admission**

Fed. Rule Civ. Pro. 36(a)(4) allows a party responding to an RFA to qualify its answer when, in good faith, the party cannot truthfully admit or deny the requested admission and sets forth in detail the reasons why. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states *that he has made reasonable inquiry* and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Id. Hedrick seeks unqualified, revised responses to a number of its RFPs to which Buchholz objected.

\\\\\

---

[3] Buccholz provided undisputed information that he is a professional fisherman who has participated in numerous fishing contests over the years in numerous places.

**RFAs No. 1-4;6-11;14**

In these RFAs, Buchholz has failed to provide an unequivocal answer, and claims he is without sufficient information and belief to properly respond. But a responding party's duty to answer an RFA goes beyond that party's personal knowledge and requires them to make "reasonable inquiry" to obtain the information sought. Fed. Rule Civ. Pro. 36(a)(4), advisory committee note (duty is similar to that required by interrogatories). Such an inquiry involves a good faith investigation of sources reasonably available to the responding party including persons and documents within its control. See Ameripride Services, Inc. v. Valley Industrial Services, Inc., 2011 WL 1321873, at *2 (E.D. Cal. 2011); Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1245-46 (9th Cir. 1981) (requiring statement that responding party has made 'reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny'.)

Here, Buchholz does not appear to have made any such inquiry. He has not told the court what steps he has taken to obtain the information or explain his failure to do so. This is especially troubling when some of the requests do not involve matters that would appear contentious, e.g., RFA 8 asks Buchholz to admit that, as a result of the collision, cross-plaintiff Hedrick sustained bodily injury; RFA 3 asks Buchholz to admit that on August 1, 2009, while driving a vessel upon Old River, California, Mr. Owen was a participant in a bass fishing tournament. Cross-defendant Buchholz is reminded of his obligation to admit or deny facts that, throughout the course of litigation, become so plainly known to all parties that he must acknowledge their existence. On the other hand, Buccholz does not have to determine from a set of legitimately disputed competing facts, which may be true. With those principles in mind, cross-defendant will re-respond to the RFAs as set forth below, and where the response is not an unequivocal admission, Buccholz shall concisely state the nature of the reasonable inquiry.

REQUEST FOR ADMISSION NO. 1:
Admit that on August 1, 2009, Richard Hedrick was aboard the Larson 2001 2101X1complained in paragraph 5 of the Complaint.

8

RESPONSE TO REQUEST FOR ADMISSION NO. 1:
Gene Buchholz lacks sufficient information and belief to respond to this request for admission because he does not know anyone named Richard Hedrick. On that basis he denies said request.

REQUEST FOR ADMISSION NO.2:
Admit that on August 1, 2009, Mr. Owen was the driver of a Skeeter/ZX250, a vessel complained in the Complaint, when it was involved in a collision as complained.

RESPONSE TO REQUEST FOR ADMISSION NO.2:
Gene Buchholz lacks sufficient information and belief to respond to this request for admission because he was not present at the alleged collision. On that basis he denies said request.

In light of the duty to make a reasonable, good faith inquiry and also given the apparent non-controversial nature of this request, cross-defendant will re-answer both of these requests.

REQUEST FOR ADMISSION NO.3:
Admit that on August 1, 2009, while driving a vessel upon Old River, California, Mr. Owen was a participant in a bass fishing tournament.

RESPONSE TO REQUEST FOR ADMISSION NO.3:
Gene Buchholz admits that Owen was a participant in a bass fishing tournament on August 1, 2009. Except as admitted, Gene Buchholz lacks sufficient information and belief to respond to this request for admission because he was not present on Old River, CA, on August 1, 2009.

Cross-defendant will re-visit his response to this request after completing a good faith inquiry into the facts and information available to him and counsel.

RFAs 4 through 7 seek legal conclusions of cross-defendant concerning the events that occurred on the day of the fishing tournament. Without ruling on the propriety of the requests, they are premature given the early stage of discovery. Cross-plaintiff is free to propound these requests at a later date but Buchholz is not required to respond to these RFAs at this time.

REQUEST FOR ADMISSION NO. 8:
Admit that as a legal result of the collision complained in the

        complaint, Richard Hedrick sustained some sort of bodily injury,
no matter how slight.
RESPONSE TO REQUEST FOR ADMISSION NO. 8:
Gene Buchholz lacks sufficient information and belief to respond
to this request for admission because he does not know Richard
Hedrick and was not present at the alleged collision. On that basis
he denies said request.

        Upon close review of this Request, the terms "legal result of the collision" is a term so vague and subject to so many legal interpretations that no further response is required.

        RFAs 9 through 11 seek the authentication of certain documents. Buchholz contends that the documents are copies containing redactions along with black and white photographs which are difficult to distinguish. Because he has not been presented with the original version of these documents, cross-defendant claims he lacks sufficient information to admit their authenticity. Cross-defendant is again reminded of his duty of good-faith and reasonableness in this process. Buchholz will revisit his answers to these requests and include any qualifications he feels is appropriate.

        REQUEST FOR ADMISSION NO. 14:
Admit that on August 2009, while driving the complained
Skeeter/ZX250, Mr. Owens drove that vessel in excess of the speed
limits applicable to the waterway at the site of the complained of
collision.
RESPONSE TO REQUEST FOR ADMISSION NO.14:
Gene Buccholz lacks sufficient information and belief to respond
to this request for admission because he was not present and did
not knowingly observe Mr. Owen driving the "complained of
Skeeter/ZX250" on August 1, 2009 and on that basis denies said
request.

        Buchholz will revisit his answers to these requests and include any qualifications he feels is appropriate.

        **RFAs No. 15-23**

        These requests seek Buchholz to admit that Russo, himself and other cross-defendants "participated in," "organiz[ed]" or "conduct[ed]" the fishing tournament at issue. Buchholz objects to all of these RFAs, claiming that "participated in," "organizing" and "conducting" are vague phrases. The terms used in cross-plaintiff's RFAs are not terms of art in

this lawsuit, nor are they rendered such by the fact that they relate to matters at issue in the case. See Fed. R. Civ. P. 36(a)(5) (party may not object solely on the ground that the request presents a genuine issue for trial). These are commonly-used terms with well-known meanings that are fairly used in this discovery. If cross-plaintiff cannot use the terms "organize," "participate" or "conduct" to inquire into Buchholz's role at the tournament, it is hard to know which words *would* be appropriate. The undersigned need not embark on such a speculative, linguistic labyrinth .

Rather, Buchholz will re-visit his responses to each of RFAs 15 through 23. If, after reviewing the RFAs at issue, cross-defendant's responses to any have changed, he will re-respond to those RFAs within ten (10) days from the issuance of this order. Further, Buchholz will cure the typo contained in his response to RFA 19 to reflect the correct date.

Finally, cross-defendant is reminded of the consequences of failing to properly respond to discovery requests as outlined in Fed. R. Civ. P. 37(c)(2) and encouraged to engage in reasonable, good-faith efforts throughout discovery in this matter. The purpose of requests for admission is to narrow the issues for trial and avoid litigation of unessential facts. Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1278 (9th Cir. 1981). This serves both parties equally as protracted litigation is costly and burdensome and the parties would be well-advised to keep this in mind as they continue discovery in this case.

/////
/////
/////
/////
/////
/////
/////
/////

CONCLUSION

As explained herein, the protective order (Dkt. #89) sought by cross-defendant Buchholz is DENIED, and he is HEREBY ORDERED as follows:

1. To produce documents responsive to requests 7-16; 19-21; 23 and; 31 as outlined in this order within ten days of this order;
2. To review and re-respond as necessary, and as outlined in this order, to requests for admission 1-3; 9-11; 14 and; 15-23 within ten (10) days of entry of this order.

DATED: October 9, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH9